UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY D. KIMBROUGH, JR.,

        Petitioner,

                              CASE NO. 08-12670
v.                              HONORABLE NANCY E. EDMUNDS
                              MAGISTRATE JUDGE SCHEER
JEFFERY WOODS,

        Respondent.
_____/

## **OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DENYING A CERTIFICATE OF APPEALABILITY, BUT GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

This matter is pending before the Court on petitioner Rodney D. Kimbrough's *pro se* habeas corpus petition under 28 U.S.C. § 2254. Petitioner alleges that his constitutional rights were violated by (1) the admission of "other acts" evidence, (2) his trial attorney's failure to object to the "other acts" evidence, (3) the prosecutor's comments during closing arguments, and (4) the trial court's scoring of the Michigan sentencing guidelines. The Court has determined that Petitioner's evidentiary claim is not cognizable on habeas review and that trial counsel was not ineffective for failing to object to the evidence. The Court also finds that the prosecutor's comments were not improper or prejudicial. Finally, Petitioner's sentence was not based on materially false information, and his challenge to the scoring of the sentencing guidelines is not a cognizable claim. Accordingly, the habeas petition will be denied.

# I. BACKGROUND

## A. The Trial, Sentence, and Direct Appeal

Petitioner was charged in Wayne County, Michigan with criminal sexual conduct involving the twelve-year-old stepdaughter of one of his friends. The victim testified at Petitioner's trial that she was living with her grandmother, sisters, aunt, stepfather, and Petitioner in December of 2000. Petitioner and her stepfather lived in the basement of the house. One night Petitioner came into her room and touched her vagina under her pajamas. A couple days later, he came into her room and inserted his penis in her vagina. Some time after that incident, her stepfather made her go downstairs, take off her clothes, and have oral sex with him and Petitioner. Petitioner then put his penis in her vagina two times. She did not tell anyone about these incidents until she became pregnant.

The victim's grandmother testified that the victim and other relatives lived in her house during December of 2000. Petitioner was like a son to her and also lived in the house. One day in July of 2001, Petitioner called her on the telephone and said that he was sorry. She hung up the telephone before Petitioner could explain the reason for his apology.

The victim's step aunt testified that, beginning when she was eleven or twelve years old and until she was fourteen or sixteen, she had a voluntary sexual relationship with Petitioner. The aunt went on to say that the victim told her on April 10, 2001, that she thought she was pregnant and that Petitioner and the victim's father had been "messing with her." The aunt contacted the police.

The victim's stepfather admitted his involvement in the crimes. He testified that during the incident in the basement, Petitioner had licked the victim's vagina and then put

his penis in her vagina while the victim sucked his (the stepfather's) penis. The victim then got on top of Petitioner and had sexual intercourse with Petitioner. After that, the victim started crying, and he (the stepfather) asked Petitioner to leave them alone.

The stepfather admitted that he had been doing sexual things with the victim since she was eight years old and that he eventually pleaded guilty to raping her and was currently incarcerated for the crime. Initially, he did not mention Petitioner's involvement in the crime, but after he admitted in a statement to the authorities that he had also raped another daughter, he wrote to the prosecutor and stated that he would be glad to be of service in the case against Petitioner.

Petitioner did not testify or present any witnesses. The defense theory was that the victim falsely accused him and that the victim's stepfather committed the rapes.

On October 10, 2002, a Wayne County Circuit Court jury found Petitioner guilty, as charged, of two counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(a) (sexual penetration of a person under thirteen years of age), and one count of second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c(1)(a) (sexual contact with a person under thirteen years of age). The trial court sentenced Petitioner to imprisonment for concurrent terms of nine to twenty years for each first-degree criminal-sexual-conduct conviction and five to fifteen years for the second-degree criminal-sexual-conduct conviction. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence in an unpublished decision, *see People v. Kimbrough*, No. 246812 (Mich. Ct. App. July 20, 2004), and on February 28, 2005, the Michigan Supreme Court denied leave to appeal, *see People v. Kimbrough*, 692 N.W.2d 842 (Mich. 2005) (table).

**B. The First Habeas Corpus Petition**

In November of 2005, Petitioner filed his first federal habeas corpus petition in this District. He alleged that (1) the trial court violated his right to due process of law by admitting evidence of other "bad acts," (2) the trial violated his right to due process when scoring the sentencing guidelines, and (3) the prosecutor injected non-record evidence into the case. This Court dismissed the petition without prejudice and tolled the statute of limitations, 28 U.S.C. § 2244(d), because Petitioner did not raise his prosecutorial-misconduct claim as a federal due process claim in the Michigan Supreme Court. *See Kimbrough v. Wolfenbarger*, No. 05-74268 (E.D. Mich. July 19, 2006) (unpublished).

### C. State Collateral Review

Petitioner then returned to state court and raised his prosecutorial-misconduct claim in a motion for relief from judgment. The trial court rejected the claim because the Michigan Court of Appeals decided the issue against Petitioner in the appeal of right.

In an application for leave to appeal the trial court's decision, Petitioner claimed that (1) the prosecutor argued facts not in evidence and vouched for witnesses, (2) defense counsel was ineffective for failing to object to the prosecutor's conduct, and (3) the cumulative effect of errors amounted to a miscarriage of justice. The Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Kimbrough*, No. 279443 (Mich. Ct. App. Nov. 15, 2007). On April 28, 2008, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Kimbrough*, 747 N.W.2d 276 (Mich. 2008) (table).

### D. The Current Habeas Corpus Petition

Petitioner filed the pending habeas corpus petition on June 20, 2008. He reasserts

his prosecutorial-misconduct claim and appears to incorporate by reference the other issues that he raised in his first petition. To the extent that any of the claims were not exhausted as federal constitutional claims in state court or are procedurally defaulted, the Court will excuse the errors and address the merits of the claims. Neither exhaustion, nor procedural default, are jurisdictional limitations. *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009) (citing *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991)), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010).

## II. STANDARD OF REVIEW

Petitioner is entitled to habeas corpus relief only if the state court's adjudication of his claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under 28 U.S.C. § 2254(e)(1), a state court's factual determinations are presumed to be correct unless the habeas petitioner rebuts them with clear and convincing evidence.

Granting a habeas petition under the "contrary to" clause is only appropriate "if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the

Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, a habeas court must ask "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

## III. DISCUSSION

### A. Other Acts Evidence

Petitioner alleges that the trial court violated his rights to due process and a fair trial by permitting the prosecutor to elicit testimony regarding his sexual affair with the victim's step aunt when the aunt was the victim's age. Petitioner contends that the evidence was not relevant to show intent, knowledge, motive, or plan and, therefore, it was inadmissible under the Michigan Rules of Evidence. Petitioner maintains that his affair with the victim's aunt was remote in time and dissimilar to the charges for which he was on trial and that the evidence poisoned the jurors' thinking. The Michigan Court of Appeals held that the evidence was admissible against Petitioner because it was offered for a proper purpose, it was relevant, and its prejudicial effect was outweighed by its probative value.

This Court finds no merit in Petitioner's claim because

[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), it has not explicitly addressed the issue in constitutional terms.

6

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003); *see also Bey v. Bagley*, 500 F.3d 514, 523 (6th Cir. 2007) (concluding that the petitioner's disagreement with the state court's ruling on "other acts" evidence involved no constitutional dimension and, therefore, was not cognizable on federal habeas review), *cert. denied*, 552 U.S. 1281 (2008). Because there is no Supreme Court decision barring the use of propensity evidence on constitutional grounds, the state court's finding – that the evidence was admissible – was not contrary to Supreme Court precedent.

Even if Petitioner's claim were cognizable on habeas review, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 68-70 (1991)). Stated differently, the Court "cannot grant the writ based on [its] disagreement with 'state-court determinations on state-law questions,' *Estelle v. McGuire*, 502 U.S. 62, 68 (1991), unless the state-court determination is so 'fundamentally unfair' that it deprives a defendant of due process." *Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (quoting *Bey v. Bagley*, 500 F.3d at 519-20).

Evidence that Petitioner had an affair with the victim's step aunt when she was a young girl was not fundamentally unfair because the aunt testified at trial that the affair was consensual and that she did not have any bad feelings about Petitioner as a result of their affair. (Tr. Oct. 9, 2002, at 149.) In addition, the trial court charged the jurors not to use evidence of improper acts for which Petitioner was not on trial to conclude that Petitioner was a bad person or likely to commit crimes. The court stated that the jurors had to find

7

Petitioner not guilty unless all the evidence convinced them beyond a reasonable doubt that Petitioner committed the charged crimes. (Tr. Oct. 10, 2002, at 43-44.)

Furthermore, as the Michigan Court of Appeals recognized, the evidence tended to demonstrate a common pattern in how Petitioner chose and approached his victims. He was a friend of the family, and both the victim and her step aunt were approximately the same age when Petitioner had sexual relations with them. The disputed evidence tended to establish the victim's credibility and to rebut the defense theory that the victim was fabricating the events. The Court concludes that Petitioner's rights to due process and a fair trial were not violated by testimony about his sexual relationship with the victim's step aunt.

## B. Trial Counsel

Petitioner alleges next that his trial attorney was ineffective for failing to object to evidence of his affair with the victim's step aunt. The Michigan Court of Appeals ruled that defense counsel's failure to object to the challenged testimony did not constitute ineffective assistance of counsel.

To establish constitutionally ineffective assistance of counsel, Petitioner must demonstrate that his attorney's "performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The "deficient performance" prong requires showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The "prejudice" prong requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Michigan Court of Appeals determined that evidence of Petitioner's affair with the victim's step aunt was properly admitted in evidence. Because the evidence was admissible under state law and did not deprive Petitioner of his constitutional right to a fair trial, defense counsel's performance was not deficient. An "attorney is not constitutionality deficient for failing to lodge a meritless objection." *Northern v. Boatwright*, 594 F.3d 555, 561 (7th Cir.), *cert. denied*, __ S. Ct. __, No. 09-11113, 2010 WL 2191897 (U.S. Oct. 4, 2010).

The Court also believes that Petitioner was not prejudiced by counsel's allegedly deficient performance. The victim's stepfather corroborated the victim's testimony when he admitted at trial that he and Petitioner had engaged in criminal sexual conduct with the victim. Thus, even if trial counsel had objected and the trial court had excluded testimony regarding Petitioner's consensual affair with another girl, there is not a reasonable probability that the result of the trial would have been different.

**C. The Prosecutor**

Petitioner alleges that the prosecutor injected non-record evidence into the case during closing arguments and gave the impression that he had admitted the charged offenses. According to Petitioner, the prosecutor was attempting to show that she was telling the truth and was being completely honest with the jurors.

The Michigan Court of Appeals determined that Petitioner did not preserve this claim for appellate review by objecting to the prosecutor's statements at the trial court level. The Court of Appeals also determined that Petitioner was not prejudiced by the prosecutor's comments and that reversal was not required. The Court of Appeals noted that the comments were a brief part of the case and that the trial court had instructed the jury that

the lawyers' statements and arguments were not evidence.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). To prevail on his claim, Petitioner must demonstrate that the prosecutor's remarks infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The prosecutor's conduct must have been improper and "'so flagrant as to render the entire trial fundamentally unfair.'" *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008) (quoting *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006)).

Petitioner correctly points out that prosecutors may not rely on prejudicial facts that are not in evidence. *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995) (citing *United States v. Leon*, 534 F.2d 667, 679 (6th Cir. 1976)). In this case, defense counsel insinuated in his closing argument that the victim's stepfather had implicated Petitioner in letters to the prosecutor in order to please the prosecutor and to avoid being charged with criminal conduct involving another stepdaughter. (Tr. Oct. 20, 2002, at 25-27.) The prosecutor acknowledged during her rebuttal argument that the victim's stepfather had written a letter to her and that she had given the letter to defense counsel. The prosecutor then asked rhetorically, "What am I trying to hide by giving it to the defense attorney[?]" At that point, the trial court interrupted the prosecutor and said,

> That is not in evidence. A couple of times already you have gone beyond and stated matters that are not in evidence. You have to state what is in the evidence here. You can't go beyond that in your argument.

(*Id.* at 35.)

The prosecutor's comments appear to have been a response to defense counsel's argument about the stepfather's letter to the prosecutor. Prosecutors ordinarily are "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *Angel v. Overton*, 682 F.2d 605, 607-08 (6th Cir. 1982) (citing *Donnelly v. DeChristoforo*, 416 U.S. at 637). Any issues raised in a defense attorney's closing argument are "fair game for the prosecution on rebuttal." *United States v. Sarmiento*, 744 F.2d 755, 765 (11th Cir. 1984).

Furthermore, the victim's stepfather admitted during his trial testimony that he had written to the prosecutor and offered to be of assistance to the prosecutor in the case against Petitioner. Thus, the fact that the letter was written and that the victim's stepfather offered to help the prosecutor after he was convicted of abusing the victim was part of the evidence. Although the letter itself was not admitted in evidence, the prosecutor did not read or summarize the contents of the letter, because the trial court interrupted her. And there is no indication in the record that the letter said Petitioner had admitted guilt. The Court concludes that the prosecutor's comments were not improper and did not deprive Petitioner of a fundamentally unfair trial.

**D. The Sentence**

Petitioner alleges that the trial court violated his right to due process when scoring two offense variables of the Michigan sentencing guidelines. The Michigan Court of Appeals determined that the offense variables were properly scored.

"A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) (citing *Travis v. Lockhart*, 925 F.2d 1095, 1097 (8th Cir. 1991); *Branan v. Booth*, 861

F.2d 1507, 1508 (11th Cir. 1988)), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990). Thus, Petitioner's challenge to the scoring of the Michigan sentencing guidelines is not a cognizable claim on habeas corpus review. *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).

Petitioner nevertheless claims that the trial court violated his constitutional right to due process of law by relying on inaccurate information. A sentence based on "extensively and materially false" information, which the prisoner had no opportunity to correct, violates due process. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). "*Townsend* and its progeny are generally viewed as having established a due process 'requirement that a defendant be afforded the opportunity of rebutting derogatory information demonstrably relied upon by the sentencing judge, when such information can in fact be shown to have been materially false.'" *Stewart v. Erwin*, 503 F.3d 488, 495 (6th Cir. 2007) (quoting *Collins v. Buchkoe*, 493 F.2d 343, 345 (6th Cir. 1974)).

### 1. Offense Variable 4

Petitioner contends that the trial court erred by scoring ten points for offense variable 4. This offense variable may be scored at ten points if the victim suffered "[s]erious psychological injury requiring professional treatment." MICH. COMP. LAWS § 777.34(1)(a). Petitioner contends that the only relevant evidence on this issue was the prosecutor's comment that the victim went to see school counselors on various occasions. Petitioner points out that there are many reasons to go to a school counselor and that the reason may or may not be for psychological counseling. While this is true, offense variable 4 may be scored ten points even if psychological counseling is not sought. *See* MICH. COMP. LAWS

§ 777.34(2) ("[T]he fact that treatment has not been sought is not conclusive.").

Furthermore, the victim testified at trial that, when she became pregnant, she initially did not mention Petitioner to doctors because she feared being labeled a "slut" for admitting that she had been raped by two men and for not knowing which man had impregnated her. (Tr. Oct. 9, 2002, at 113-14.) The victim also testified that she initially did not tell the investigator the whole story about Petitioner because she was tired at the time, had told her story to several different people, and did not want to hear it again; instead, she just wanted it out of her mind. (*Id.* at 131-34.) There was additional testimony that the victim cried after the incident with her stepfather and Petitioner and that she told her aunt the two men had been "messing" with her. All of this evidence is some indication that the victim suffered serious psychological injury that may have required professional treatment. The Court concludes that offense variable 4 was not scored on the basis of materially false information.

### 2. Offense Variable 10

Petitioner's only other challenge to the scoring of the sentencing guidelines concerns offense variable 10, which measures exploitation of a vulnerable victim. *See* MICH. COMP. LAWS § 777.40. Ten points may be scored for exploiting a victim's youth. MICH. COMP. LAWS § 777.40(1)(b). Petitioner contends that the trial court erred by scoring points for exploitation of a vulnerable victim because it is impossible to be convicted of the charged offense without exploiting the victim's youth. The Michigan Court of Appeals, however, has stated that an element of the charged offense may also be considered when computing the score for an offense variable. *People v. Gibson*, 557 N.W.2d 141, 143 (Mich. Ct. App. 1996). Thus, the trial court did not rely on materially false information when scoring offense

variable10.

### 3. Summary

The alleged violations of state law are not cognizable on habeas review, and Petitioner has failed to show that the trial court sentenced him on the basis of "extensively and materially false" information, which he had no opportunity to correct. Therefore, the challenge to Petitioner's sentence fails to state a claim for which habeas relief may be granted.

## IV. CONCLUSION

The state appellate court's adjudication of Petitioner's claims did not result in an unreasonable determination of the facts and was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Accordingly, the petition for a writ of habeas corpus is **DENIED**.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken from the final order in a state prisoner's habeas corpus case unless a judge or circuit justice issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists would not find the Court's resolution of Petitioner's claims

debatable or wrong, nor conclude that the issues warrant encouragement to proceed further. The Court therefore **DECLINES** to issue a certificate of appealability. However, if Petitioner chooses to appeal this decision, he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

                            s/Nancy G. Edmunds
                            Nancy G. Edmunds
                            United States District Judge

Dated: October 27, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 27, 2010, by electronic and/or ordinary mail.

                            s/Carol A. Hemeyer
                            Case Manager